UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| JOHN DOE | ) | |
|---|---|---|
| | ) | Case No.16-cv-08298 |
| v. | ) | |
| | ) | Judge Edmond Chang |
| THE UNIVERSITY OF CHICAGO, et. al., | ) ) | |
| | ) | |
| Defendants | ) | |

**JOHN DOE'S REPLY IN SUPPORT OF HIS MOTION FOR
A PRELIMINARY INJUNCTION**

1. **John Doe will suffer irreparable harm if no injunction is granted**.

As detailed below, Plaintiff John Doe ("John Doe") satisfies the Seventh Circuit's requirement that he will suffer irreparable injury unless The University of Chicago ("UC") is enjoined. *See, Planned Parenthood of Wisconsin, Inc. v. Van Hollen*, 738 F.3d 786, 795 (7th Cir.2013) (setting forth the elements of a temporary injunction). This is partly because since the August 24, 2016 temporary restraining order ("TRO") hearing, UC's conduct has directly contradicted the letter and spirt of UC's statements at the TRO Hearing and those contained in *Docket 21*. As a result, John Doe has continued to suffer the type of pre-TRO Hearing psychological harm this Court inquired about during the TRO hearing. *See, Exhibit 1* (containing affidavits from John Doe, John Doe's parents, and John Doe's health care providers related to John Doe's pre-TRO Hearing and post-TRO Hearing treatment for significant activities of self-harm).[1] In fact, because of ongoing stress caused by UC's conduct detailed below and accusations

---

[1] *See generally, JOHN DOE'S MOTION TO FILE UNDER SEAL AFFIDAVITS AND RECORDS RELATED TO PSYCOLOGICAL HARM SUFFERED BY JOHN DOE AND UN-REDACTED COPIES OF EXHIBITS REFERENCED IN JOHN DOE'S REPLY IN SUPPORT OF HIS MOTION FOR A*

1

by Defendant Jane Doe ("Ms. Doe"), John Doe's self-harm manifestations caused his family to bring John Doe home to New York for medical treatment to supplement the pre-TRO medical care he was receiving in Chicago. *Id.*

These most recent episodes of self-harm likely could have been avoided if UC's post-TRO Hearing conduct honored the letter and spirt of the promises UC made at the TRO hearing. This Court relied on UC's representations when it denied John Doe's initial TRO motion and stated:

> The University shall respond to [John Doe's motion for a preliminary injunction by] . . . focusing on . . . whether there is irreparable harm or inadequate remedy at law for proceeding with all three complaints in one proceeding . . . [given] The University agreed to use the standard for consent that appears in the 2013 Manual, to give Plaintiff an extension of time to respond to the Jane Doe complaint, and to consider all three complaints with one decision−making entity." *Docket 11.*

UC's Memorandum in Opposition to John Doe's Preliminary Injunction Motion ("Docket 21") asserts that the concessions it offered at the TRO Hearing were much ado about nothing. For, UC alleges "a phone call [by John Doe's attorney] to University counsel [placed prior to the TRO motion] would have revealed the absence of a need to seek a temporary restraining order" because UC had already decided to comply with John Doe's requests. *Docket 21,* PageId.546. fn.1.

In reality, UC's conduct before and after the TRO proves why only an injunction will stop the irreparable harm UC is inflicting on John Doe. For instance, prior to the TRO Hearing, UC

---

*PRELIMINARY INJUNCTION TO BE FILED ON SEPTEMBER 12, 2016* (containing John Doe's motion to file, among other things *Exhibit 1* under seal). As an aside, it should be noted UC's memorandum in *Docket 21* incorrectly attempts to defeat John Doe's request for injunctive relief by making false calls about John Doe and his attorneys. For instance, UC incorrectly claims John Doe and his attorney violated FRCP 65(b)(2) by not putting UC on notice of John Doe's intent to seek injunctive relief. *See, Docket 21,* PageId.546. This claim is incorrect because *Docket 1-20* and *Docket 4* prove John Doe and his attorneys respectively put UC on notice of John Doe's intent to seek injunctive relief on August 7, 2016 and August 24, 2014. *See Docket, 1-20,* PageId.356 (containing John Doe's August 7, 2016 email informed UC that unless UC responded to his questions regarding UC's disciplinary process, John Doe would "<u>have no choice but to file a lawsuit seeking to enjoin the University's unjust disciplinary procedure against me</u>." *Docket 4,* PageId.391(detailing how in the two weeks before the TRO Hearing, UC refused to answer John Doe's questions regarding the disciplinary proceeding articulated in his aforementioned August 7, 2016 email); *Id.,* PageId.409 (containing John Doe's attorney's notification that he provided UC notice of John Doe's TRO motion prior to the TRO hearing).

Associate Dean Jeremy Inabinet ("Inabinet"): (a) _rejected_ the possibility of all Three Complaints being adjudicated together by informing John Doe that his May 2016 Title IX Complaint did not violate UC's 2015-16 Student Manual ("UC's 2015 Manual") prohibitions against gender based sexual harassment or the creation of a gender based hostile environment; (b) _refused_ to consider John Doe's claim that Jane Doe's June 2016 Title IX Complaint violated anti-retaliation prohibitions in UC's 2015 Manual; and (c) told John Doe that Jane Doe's June 2016 Title IX Policy would be adjudicated under UC's 2015 Policies even though her allegations involved conduct occurring in 2013. *See generally, Docket 4,* PagId.376 (discussing same).

Inabinet's aforementioned pre-TRO Hearing conduct manifested the anti-male gender bias and multi-year Title IX retaliation that John Doe has suffered at the hands of Inabinet, UC, Ms. Doe, and her friend Jane Roe. *See generally, Docket 4,* PageId.377-822, 397-402 (discussing same). Moreover, UC should acknowledge that Inabinet's gender bias[2] impacted his pre-TRO decision to refuse to adjudicate simultaneously the three complaints this Court addressed in *Docket 11* ("Three Complaints"). This is because, UC admits UC's Policy "specifically allows the combined adjudication where two students each submit a complaint against each other." *Docket 21,* PageId.547, PageId.5550 (citing *Docket 1-18* which contains UC's 2015 Manual). Yet, Inabinet had already refused to apply that Policy to John Doe's May 2016 Title IX Complaint against Ms. Doe and subsequently failed to apply that Policy to John Doe's June 2016 Title IX Complaint that Ms. Doe filed her complaint in retaliation to John Doe's protected activities. More telling is UC's assertion that it can adjudicate the Three Complaints via "_different_" disciplinary committees – as John Doe requested – if UC refuses to honor promises it made to John Doe under UC's Policies. *Id.* PageId.5550 (quoting *Docket 1-18* which contains UC's 2015 Manual). Quite

---

[2] *See generally, Docket 4,* PageId.383-84 (discussing Inabinet's anti-male gender bias tendencies).

simply, Inabinet appears to be picking and choosing which UC Policies to apply to the Three Complaints and is making his decisions in the way most calculated to inflict prejudicial and unfair outcomes on John Doe because he is a male. As documented below, Inabinet's behavior is portrayed in both his pre-TRO Hearing and post-TRO Hearing conduct toward John Doe.

In addition, UC incorrectly alleges a single disciplinary committee's simultaneous adjudications of the Three Complaints will not "harm" John Doe because it is "consistent with [John Doe's] arguments about how" UC "*should* process the inter-related complaints. *Id.,* PageId.550 (emphasis in original). UC knows this is untrue because UC rejected John Doe's request that <u>all</u> provisions of UC's 2013 Student Manual ("UC's 2013 Manual")[3] be applied in any contemporaneous adjudication of the Three Complaints. *See e.g., Docket 4,* PageId.394, 407 (containing John Doe's request this Court enjoin UC from utilizing UC's 2015 Manual to adjudicate Jane Doe's June 2016 Title IX Complaint "because this manual did not exist in 2013."). In rejecting John Doe's request, UC irreparably harms John Doe by refusing to honor promises in UC's 2013 Manual such as those detailed in items 3 and 9 on pages 5-7 below.

Making matters worse, since the TRO Hearing, UC has engaged in at least the following 9 examples of conduct in contradiction of the letter and spirt of UC's representations at the TRO and those contained in *Docket 21*:

1. Despite UC's allegations that it wishes to find common ground with John Doe and his attorneys,[4] neither Inabinet nor UC's attorneys responded to John Doe and his attorneys' August 29, 2016 and August 30, 2016 requests to reach a mutually agreeable understanding about how the Three Complaints would be adjudicated together. *Compare, Docket 22-2,* PageId.674, 681-95 (detailing John Doe and his attorneys' request regarding same); with *Docket 22-7,* PageId.1023-24 (detailing UC's rejection of same);

---

[3] UC's 2015 Manual and UC's 2013 Manual collectively referred to as ("UC's Policies")

[4] *See e.g., Docket 21,* PageId.546. fn.1.

2. Even though UC alleges it is "already proceeding in a fair, reasonable manner . . . to *avoid* irreparable harm,"[5] Inabinet refused to honor the promise he made in his August 29, 2016 email to John Doe to provide "answer[s]" to John Doe's questions about the "process" by which UC would adjudicate all Three Complaints contemporaneously. Inabinet did so even though John Doe and his attorneys provided these questions to Inabinet and UC's attorneys on August 29, 2016 and August 31, 2016. *Compare, Docket 22-3,* PageId.836 (containing Inabinet's offer to answer questions); *Docket 22-2,* PageId.679-95 (detailing John Doe and his attorneys' request for answers to how the Three Complaints would be adjudicated); with *Docket 22-7,* PageId.1023-24 (detailing UC's rejection of same);

3. UC incorrectly claims it "is illogical" to allege its proposal for adjudicating the Three Complaints "could *cause* [John Doe] irreparable harm."[6] This claim lacks merit in part because UC admits it is causing this harm by rejecting John Doe and his attorney's request that UC honor <u>all</u> promises made in UC's 2013 Manual. In doing so, UC is refusing to honor promises which include, but are not limited to:

   a. UC's promise in UC's 2013 Manual to provide John Doe greater ability to question the veracity of Jane Doe and/or Jane Doe's witnesses than John Doe is provided under U0C's 2015 Manual. *Compare Docket 22-2,* PageId.674, 677, 681-82 (detailing John Doe and his attorneys' request regarding same); with *Docket 22-7,* PageId.174-75 (detailing UC's rejection of same);

   b. UC's 2013 Manual's promise which - unlike UC's 2015 Manual - contemplates Jane Doe's delay in filing a complaint against John Doe as being a factor UC decision makers may consider in finding John Doe not responsible. *Id.*

4. Inabinet and UC's attorneys also irreparably harmed John Doe by rejecting his requests that portions of Jane Doe's June 2016 Title IX Complaint be withheld from individuals adjudicating the Three Complaints because this material is: (a) irrelevant to Jane Doe's state of mind on the night she alleges John Doe assaulted her; and/or (b) irrelevant and highly prejudicial to John Doe. *Compare, Docket 22-2,* PageId.681, 691-93, 701 (detailing John Doe and his attorneys' request for same); with *Docket 22-3,* PageId.836 (detailing UC's rejection of same);

---

[5] *Docket 21,* PageId.550 (emphasis in original).

[6] *Docket 21,* PageId.550-01 (emphasis in original).

5

5. Even though *Dockets 1 and 1-15* detail Inabinet's substantial involvement in John Doe's June 2016 Title IX and Inabinet's initial rejection of John Doe's May 2016 Title IX Complaint, Inabinet manifested a disingenuous assertion that he lacks an awareness of these complaints sufficient to open a disciplinary investigation of Jane Doe. *See e.g., Docket 22-3,* PageId.837 (discussing same);

6. Inabinet sent John Doe three emails after the TRO Hearing which refused to consider information John Doe provided UC regarding John Doe's complaints against Jane Doe. *Compare, Docket 22-2,* PageId.679-95, *Docket 22-6,* PageId.856-57 (detailing John Doe's Post-TRO Hearing submissions of information to Inabinet to facilitate UC's investigation of Jane Doe); with *Docket 22-3,* PageId.837, *Docket 22-4,* PageId.842-43, *Docket 22-5,* PageId.847 (detailing Inabinet's rejection of same);

7. UC's representations regarding a willingness to provide John extensions of time,[7] appear to be disingenuous in part because UC rejected John Doe's and his attorney's request to extend Inabinet's September 7 deadline for interviewing John Doe until John Doe's attorney returned to Illinois on September 14, 2016. *Compare, Docket 22-8,* PageId.1026; *Docket 22-2,* PageId.676 (detailing John Doe and attorney's request for same); with *Docket 22-7,* PageId.1024; *Docket 22-4,* PageId.844 (detailing UC's rejection of same);

8. Despite suggesting UC wished to work directly with John Doe's attorneys to better facilitate the disciplinary process,[8] UC's attorneys rejected John Doe's attorneys' request that UC's future communications regarding issues related to the Complaint be sent directly to John Doe's attorney instead of John Doe. UC only agreed to reconsider this rejection after John Doe's attorneys explained how UC's mishandling and failure to handle all Three Complaints together had caused John Doe psychological harm which included, but was not limited to, significant self-harm episodes for which John Doe is currently receiving treatment. *Compare, Docket 22-2,* PageId.676 (detailing John Doe's attorneys' request for same); with *Docket 22-7,* PageId.1023 (detailing UC's initial rejection of same);

9. UC refuses to respond to John Doe's concerns about the irreparable harm he will suffer if a single committee adjudicates the Three Complaints simultaneously. For example, John Doe raised the following concerns:

    a. The constitution of UC disciplinary committees under UC's 2015 Manual differ markedly from how said committees were constituted under UC's 2013 Manual; *Compare, Docket 22-2,* PageId.674, 677, 681-82 (detailing John Doe and his attorney's concerns regarding same); with *Docket 22-7,* PageId.174-75 (detailing UC's refusal to response to these concerns);

b. Disciplinary hearing committees trained to implement disciplinary procedures under UC's 2013 Policies and UC's 2015 Policies likely received different training regarding how to implement UC's policies regarding sexual misconduct. *Id.* and;

c. The disciplinary committee which UC proposes to adjudicate the Three Complaints appears to have received training which includes information about conducting disciplinary proceedings so as to reduce the potential for re-traumatization of individuals making sexual misconduct allegations which would not have been provided to disciplinary committees operating under UC's 2013 Manual. *Id.*

UC's conduct in items 1-9 above bears remarkable similarities with Western State Colorado University's actions after the *Johnson* Court rejected a falsely accused male student's initial request for a TRO. *See Docket 37* (containing *Johnson v. Western State Colorado Univ.*, 13-CV-2747 (D. Colo. Oct. 21, 2013). But, District Court Judge Martinez in *Johnson* later reversed his initial denial of the TRO and granted Johnson's renewed TRO motion because the university violated the *"status quo"* and "the spirit if not the letter" of the Court's TRO order by rushing ahead before the Court could evaluate the potential existence of "irreparable harm." *Id.,* PageId.415-16.

UC's decision to engage in items 1-9 above reflect a similar disregard for this Court's requests for briefs regarding: "whether there is irreparable harm or inadequate remedy at law for proceeding with all three complaints in one proceeding . . . with one decision−making entity." *Docket 11.* In addition, Docket 22-2 through Docket 22-8 strongly suggest UC is rushing ahead with its prosecution of John Doe while refusing to engage in an equally zealous prosecution of John Doe's Complaints against Ms. Doe. For instance, UC is subjected John Doe to the

---

[7] *See e.g. Docket 547,* PageId.547, fn.2 (stating: "it should be noted, upon [John Doe's] request, the University granted an extension of time for him to submit his [written] response" to Jane Doe's June 2016 Title IX Complaint).

[8] *See e.g., Docket 21,* PageId.546. fn.1.

following deadlines without telling John Doe if UC is imposing *any* deadlines on Ms. Doe:

1. On or before September 7, 2016 John Doe must submit to an interview by Inabinet regarding John Doe's written response to Jane Doe's June 2016 Title IX Complaint. *See, Docket 22-3,* PageId.837;

2. Imposing a September 9, 2016 deadline for John Doe to "file any complaint related to the current investigation" – despite the fact that UC has had John Doe's initial Complaint on file since May, 2016. *Docket 22-3,* PageId.839;

3. Setting a September 16, 2016 deadline for Inabinet to "complete an interview [of John Doe] regarding any additional complaint(s)." *Id.,* and;

4. Imposing a September 23, 2016 deadline for John Doe to "respond in writing, to written complaint(s)" even though Inabinet does not detail exactly what "written complaint(s)" he is referring to. *Id*.

Despite being fully aware of Inabinet's aforementioned deadlines and conduct detailed above,[9] UC's attorneys claim John Doe has "only been asked to submit a written response to the allegations in" Jane Doe's June 2016 Title IX Complaint. *Docket 21,* PageId.547. This claim in unequivocally false.

UC's assertion that, prior to the TRO-Hearing, UC had "already planned to follow procedures that" John Doe's "request[ed] this Court to require" is also patently incorrect. *Docket 21,* PageId.546. Proof of the disingenuousness of this claim is detailed above, in the Complaint, and in *Docket 4*. *See e.g., Docket 4,* PageId.394, 407 (containing John Doe's request this Court enjoin UC from utilizing UC's 2015 Manual to adjudicate Jane Doe's June 2016 Title IX Complaint "because this manual did not exist in 2013."). Similar proof is found in, UC's post-TRO Hearing decision to reject John Doe's requests to find mutually agreeable proposals to mitigate harm enough so John Doe could withdraw his request for injunctive relief. *See generally,*

---

[9] *See generally, Dockets 22-2, 22-3* (containing communications between John Doe's attorney and UC attorneys).

8

*Docket 22-2, Docket 22-3,* and *Docket 22-7,* PageId.1023-24 (detailing UC's rejection of John Doe's requests to find a mutually agreeable terms underwhich John Doe could withdraw his request for injunctive relief). One of John Doe's proposals involved his request that UC honor promises made in UC Policies in the following manner:

> " . . . if UC decision makers adjudicates all Three Complaints contemporaneously. . . [John Doe requested that UC might] first present the [disciplinary] committee with all of the evidence constituting [Jane Doe's] campaign of sexual harassment and false accusations of assault [related to John Doe's May 2016 Title IX Complaint] . . . [i]n this regard, [Jane Doe] must establish a preponderance of the evidence sufficient for the disciplinary committee to find that [John Doe] assaulted her 'and many others.' During this portion of the proceeding, [John Doe needs] assurances that, if [Jane Doe] repeats her allegation [that John Doe] sexually assaulted a student named [Jane Roe], [that John Doe] will be permitted to provide the committee [UC]'s 2014 findings that prove [UC] rejected [Jane Roe's] claims against [John Doe] as meritless under the 2013 Policy . . . if after hearing this type of evidence, the committee finds it is 'more likely than not' [Jane Doe] violated University policies . . . the disciplinary committee should then find [Jane Doe] responsible for these violations of Title IX and [UC] Policy and render an appropriate punishment . . . Then, the disciplinary committee should hear evidence of [John Doe's June 2016 Title IX Complaint] that [Jane Doe's June 2016 Title IX Complaint] violated [UC]'s prohibitions against bad faith, false and/or retaliatory conduct for [John Doe's] protected activities. During this process, [John Doe] need[s] assurances that [John Doe] will be permitted to present to the hearing panel the causal connections between [Jane Doe]'s belated complaint and: (a) [UC]'s No-Contact Directive; (b) [John Doe's May 2016 Title IX Complaint]; and (c) the 'Cease and Desist' letter [Jane Doe] received from [John Doe's] attorneys. After this evidence is presented, and [Jane Doe] presents any rebuttal evidence, the disciplinary committee should render a determination [whether] it is 'more likely than not' that [Jane Doe] filed her false complaint against [John Doe] in bad faith and in violation of the anti-retaliation provisions of Title IX and [UC] policy. If the disciplinary committee reaches this decision, it should then render an appropriate punishment . . . If and only if the disciplinary committee rejects [John Doe's] two complaints, after providing its rationale for doing so on the record, the committee should then proceed with the adjudication of [Jane Doe's June 2016 Title IX Complaint] against" John Doe. *Docket 22-2,* PageId.684-85.

Instead of working together with John Doe to find mutually agreeable common ground with regard to this request and others, UC rejected John Doe's concerns and engaged in the conduct detailed above. Therefore, the facts suggest that unless UC is enjoined it will continue irreparably harming John Doe's mental health and continue to violate UC's Policies. For, UC is actually

causing John Doe to experience the psychological trauma this Court spoke about at the TRO Hearing. *See generally, Exhibit 1* (containing affidavits from John Doe, John Doe's parents, and John Doe's health care providers related to John Doe's pre-TRO Hearing and post-TRO Hearing treatment for significant activities of self-harm).

The irreparable harm detailed above satisfies the *Roland Machine, Libertarian Party,* and *SMC Corp.* decisions' guidelines for granting injunctive relief. *See generally, Docket 4,* PageId.402-03 (discussing *Roland Machine Co. v. Dresser Indus., Inc.,* 749 F.2d 380 (7th Cir. 1984); *Libertarian Party v. Packard*, 741 F.2d 981 (7th Cir. 1984); *SMC Corp. v. Lockjaw, LLC*, 481 F. Supp. 2d 918, 928 (N.D. Ill. 2007) of which John Doe incorporates via reference herein). As a result, John Doe respectfully requests this Court find John will suffer irreparable injury unless UC is enjoined.

**1(a).** <u>**John Doe's irreparable injury is not speculative in nature.**</u>

UC's memorandum opposing John Doe's injunction never mentions the *Johnson* decision detailed above. *See generally Docket 21.* This may be because UC is aware its conduct in items 1-9, above is causing John Doe irreparable injuries similar to those which caused the *Johnson* Court to grant a TRO after initially denying it. *Supra,* p.7 (discussing *Johnson*). Instead, UC alleges the facts of this case – when viewed against the facts of other court decisions addressing college students – prove John Doe's irreparable injuries are too speculative. *See generally, Docket 21,* PageId.551-54. However, the court decisions UC cites do not support UC's arguments in part because none of those decisions: (a) involve a university engaging in Title IX Retaliation and the other conduct UC is engaging in items 1-9 above; and (b) none of the plaintiffs in those cases is experiencing the significant self-harm episodes detailed in *Exhibit 1*.

Moreover, the *Tsuruta, Jackson,* and *Ohio State University ("OSU")* decisions cited by UC involved the denial of injunctive relief because plaintiffs could not establish a likelihood of success on the merits or irreparable harm,[10] but items 1-9 above and §3 below prove John Doe establishes both these requirements. As a result, UC incorrectly alleges *Tsuruta, Jackson,* and *Ohio State University* warrant the rejection of John Doe's request for injunctive relief. *Docket 21,* PageId.551.

Similarly, UC's discussion of the *Ritter, King,* and *Middlebury College* decisions neglected to mention how the plaintiffs in those cases – like John Doe – established a likelihood of success on the merits and irreparable harm. *Compare, Docket 21,* PageId.554 (discussing *Ritter, King,* and *Middlebury College*) with, *Docket 21-1,* PageId.632-34 (containing the *Ritter v. State of Oklahoma* decision which at p.**2-3 details why plaintiff's breach of contract claim was likely to succeed on the merits and that he will suffer irreparable harm); *Docket 21-1,* PageId.627-31 (containing the *Doe v. Middlebury* decision which at p.**2-3 details why plaintiff's breach of contract claim was likely to succeed on the merits and that he will suffer irreparable harm); PageId.615-26 (containing the *King v. DePauw University* decision which at p.**11-13 details why plaintiff's breach of implied contract claim was likely to succeed on the merits and that he will suffer irreparable harm).

---

[10] *See, Doe v. The Ohio State Univ.,* 136 F. Supp. 3d 854, 863-870 (S.D.Oh. Jan. 22, 2016)(denying plaintiff's request for injunctive relief in part because plaintiff's constitutional claims likely failed since these arguments hinged on plaintiff's incorrect allegation that a university lacked legal authority to discipline students for off-campus sexual misconduct); *Docket 21-1* (containing the *Tsuruta v. Augustana University* decision cited by UC in Docket 21 which details why plaintiff could not establish the "most important" element required for a TRO because of the following fatal defects: (a) plaintiff advanced an improper constitutional §1983 claims against a private college; (b) plaintiff's non-retaliation Title IX claims likely failed because he did not present "any" evidence that "his gender was a motivating factor behind the school's conduct; and (c) plaintiff's breach of contract and promissory estoppel claims likely failed because the university's policies allowed it to proceed with the disciplinary action before the pending criminal charges against the plaintiff were resolved); *Docket 21-1,* (containing the *Jackson v. Macalester College University* decision cited by UC in Docket 21 which rejected plaintiff's request for an injunction that would prohibit his university from "conducting *any* investigation or disciplinary proceeding" related to a sexual assault for which plaintiff faced criminal)(emphasis added).

This distinction is critical because the Seventh Circuit's *Promatek* decision found the greater the movant's likelihood of success on the merits, the less strong a showing the movant must make that the balancing of harms weighs in its favor. *Promatek Indus. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002). And, as discussed in §§2-3 below, the facts prove: (a) John Doe's promissory estoppel, negligence, and/or Title IX Claims are likely to succeed on the merits; and (b) the balancing of harms favors injunctive relief requiring UC's adjudication of the Three Complaints without engaging in Title IX retaliation and in accordance with UC's Policies which require fair and impartial disciplinary proceedings.

Similarly, UC incorrectly alleges John Doe engages in mere "speculation" by raising concerns about investigations that "might lead to negative consequences" with regard to a disciplinary hearing that may or may not occur. *Docket 21,* PageId.553. *See also, Id.,* PageId.548-49 (containing similar allegations). This is incorrect in part because on August 25, 2016, UC attorney Elizabeth Shanin suggested to this Court that it was more likely than not Jane Doe's allegations against John Doe would be adjudicated by a UC disciplinary committee. In addition, UC lacks a basis for claiming John Doe's "sole concern" is a "remote future injury" related to "speculative" concerns about future "sanctions" that might damage him academically or professionally. *Docket 21,* PageId.553. This claim is false because John Doe's Complaint, TRO motion, and this memorandum prove John Doe is <u>currently</u> suffering irreparable harm that can only be mitigated by injunctive relief. *See generally, Docket 1,* (containing Complaint); *Docket 4,* PageId.402-04 (discussing UC's harm inflicted on John Dow which is incorporated by reference herein); *Supra,* §1 (discussing same). Therefore, John Doe respectfully requests this Court find John will suffer irreparable harm unless UC is enjoined.

**2.    John Doe's likelihood of success on the merits.**

The facts detailed in §1 above reinforce John Doe's facts in *Docket 4* that his promissory estoppel, negligence, and/or Title IX Claims are likely to succeed on the merits. *See generally, Docket 4,* PageId.386-402 (discussing same and incorporated by reference herein). For instance, UC's conduct in §1 proves UC intends to deny John Doe significant promises owed to John Doe under UC's 2013 Manual. *Supra,* p.5-7, items 3 and 9 (discussing same). In addition, §1 strongly suggests that unless enjoined UC will continue to engage in an unfair and biased disciplinary proceeding which will needlessly inflict sever psychological harm on John Doe.

**3.    UC should be enjoined because injunctive relief benefits the public interest and UC's harm to John Doe outweighs any harm to UC.**

The facts detailed above - and in *Docket 4* - prove John Doe satisfies the Seventh Circuit's requirement that John Doe's threatened injuries outweigh the harm that UC alleges to itself and which the public *might* suffer if UC were enjoined. *See e.g., Planned Parenthood of Wisconsin, Inc.,* 738 F.3d 786, 795 (7th Cir.2013) (setting forth the elements of a temporary injunction); *Docket 4,* PageId.402-04 (discussing the harm UC is inflicting on John Doe which is incorporated by reference herein).

UC's reliance on *OSU, King,* and *Ritter* does not support UC's arguments that the benefits of granting John Doe injunctive relief are outweighed by harm to the general public and UC. *Compare, Docket 21,* PageId.556-57 (containing UC's discussion of the *OSU, King,* and *Ritter* decisions), with *Docket 4,* PageId.403-04 (detailing why *King* and *Ritter* suggest this Court should enjoin UC – of which John Doe incorporates by reference herein); *Supra,* p.10 (detailing why *OSU, King,* and *Ritter* suggest this Court should enjoin UC).

Simply put, UC lacks a basis in fact for alleging John Doe seeks to "harm" or "contravene" UC's interests in advancing UC's "significant public interest" regarding "on-campus sexual

misconduct investigation procedures." *Docket 21,* PageId.555. Instead, all John Doe seeks is to require UC to administer these procedures in the fair and impartial manner – without engaging in Title IX retaliation as UC's Policies promised John Doe UC would do. *See e.g., Docket 4,* PageId.396-99 (discussing same and incorporated via reference herein). Yet, §1 above strongly suggest UC has no intention of honoring these promises unless enjoined.

This may be why UC incorrectly alleges injunctive relief would "invite <u>*all respondents*</u> in sexual misconduct proceedings to attempt to micro-manage such proceedings by rushing into court . . . ." *Docket 21,* PageId.556 (emphasis added). Granting John Doe's request would not create a long line of students at courthouse steps in America. For, the only students who could rely on a decision granting injunctive relief in this case would be those who suffer Title IX retaliation or substantial psychological harm like that inflicted on John Doe because UC refuses to honor the promises it makes in UC Policies. As a result, an injunction in this case would square with *King, Ritter,* and *Middlebury College* which granted injunctive relief to male students who alleged their universities falsely accused them sexual misconduct in part because: (a) the plaintiffs' claims were likely to succeed since their universities likely violated university policies during disciplinary procedures; and (b) the harm to the plaintiffs outweighed any harm to the general public or the universities they attended. *Docket 21-1,* PageId.632-34 (containing *Ritter v. State of Oklahoma* which at p.**2-3 details why plaintiff's breach of contract claim was likely to succeed on the merits and that the resulting harm outweighs any harm to the university or the general public); *Docket 21-1,* PageId.627-31 (containing *Doe v. Middlebury College* which at p.**2-4 details why plaintiff's breach of contract claim was likely to succeed on the merits and that the resulting harm outweighs any harm to the university or the general public); PageId.615-26 (containing *King v. DePauw University* which at p.**11-14 details why plaintiff's breach of implied contract claim

was likely to succeed on the merits and that the resulting harm outweighs any harm to the university or the general public).

Consequently, John Doe respectfully requests this Court find the facts detailed above and in *Docket 4* prove the harm UC is causing John Doe outweighs those UC alleges it or the public would suffer if UC is required to cease its Title IX retaliation and honor its promises to John Doe contained in UC's Policies.

Respectfully submitted,
Attorney for John Doe

By: /s/ Eric J. Rosenberg

Eric J. Rosenberg (0069958)
Tracy L. Turner (0069927)
Rosenberg & Ball Co. LPA
395 North Pearl Street
Granville, Ohio 43023
740.644.1027 phone
866.498.0811 fax
erosenberg@rosenbergball.com
tturner@rosenbergball.com
*Lead Attorneys for Plaintiff*


/s/Chad Nold

Chad Nold (6317549)
Daliah Saper (6283932)
Saper Law Offices, LLC
505 N. LaSalle St., Ste 350
(312) 527 – 4100
chad@saperlaw.com
ds@saperlaw.com
*Local Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on September 7, 2016, I filed this court filing with the Clerk of Court using the CM/ECF system which will send notification of the filing to all registered parties and that a copy of this court filing was mailed via regular U.S. Mail to Jane Doe's home address.

/s/Eric Rosenberg